UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

EMMANUEL PALMER,

                Plaintiff,                Case No. 1:09-cv-977

v.                                                    Honorable Robert Holmes Bell

PATRICIA CARUSO et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Caruso and Unknown Parties 1 and 2. The Court will transfer the remainder of the complaint to the Eastern District of Michigan.

**Discussion**

I. <u>Factual allegations</u>

Plaintiff Emmanuel Palmer presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility, though the actions he complains of occurred while he was housed at the St. Louis Correctional Facility. Plaintiff sues the following MDOC officials: Director Patricia Caruso, (unknown) MDOC Administrator of the Bureau of Health Care, and (unknown) Chief Medical Officer. He also sues the following SLF employees: Warden Nick Ludwick; Nurses Autumn Ramatz and Barbra Hessbrook; Lieutenant (unknown) Flore; Resident Unit Officers (RUOs) (unknown) Harrington and (unknown) Jackson; Corrections Officers (COs) (unknown) Hensley, (unknown) Beaurgard, (unknown) Cheopelo and G. Thelen; and Sergeant (unknown) Shaw.

In his *pro se* complaint, Plaintiff alleges that, on June 29, 2008, he injured his right big toe, causing great pain and swelling. He sent a medical kite to health care, which was marked "urgent" and in which he complained of "severe pain." (Am. Compl. at 5, docket #8.) Plaintiff alleges that he was denied health care services by Defendants Flore and Harrington. He also alleges that Defendant Ramatz gave a written response to his kite, denying him medical care without an examination. On July 1, 2008, as a result of the pain in his foot, Plaintiff fell down a flight of stairs, injuring his right hip, right shoulder and right rib cage. Defendant Hessbrook was called to the scene and looked at Plaintiff's shoulder and ribs, but did not examine Plaintiff's hip. Hessbrook allegedly ridiculed Plaintiff throughout the exam and then said, "I don't have time for this," ordering an officer to get a wheelchair to take Plaintiff back to his cell. (Am. Compl. at 7, docket #8.)

Once back in his cell, Defendant Jackson denied Plaintiff the opportunity to go to healthcare because Plaintiff could not walk, stating, "[I]f you can't walk then you refused medical." (*Id.*) The following day, July 2, 2008, Plaintiff was denied all three meals because he could not walk. Defendant Hensley ordered Plaintiff to walk to the dining hall, but Plaintiff told him he could not walk and needed to go to the medical department. Hensley ordered him back in his cell and told him he would call medical and order a lay-in food tray. Hensley made neither call.

On July 3, 2008, Plaintiff tried to force himself to walk to medical so that he could get some food. Dragging his right foot, Plaintiff stumbled several times before falling. Defendants Flore, Beaurgard, Cheopelo and Thelen merely watched Plaintiff as he struggled in pain, ignoring the pleas of Plaintiff and other inmates for help. Defendant Flore eventually ordered a wheelchair, but he directed that Plaintiff wheel himself to his housing unit, not to healthcare. Plaintiff explained that he could not move the wheelchair because of his shoulder injury. Flore ordered that Plaintiff be handcuffed and taken to administrative segregation for disobeying a direct order. Plaintiff was placed naked in the shower, which was used as a holding cell. Thirty minutes later, Plaintiff called to Defendant Hessbrook while she was on her rounds. After he explained what happened, Hessbrook had Plaintiff taken out of the shower and gave him a towel, but she refused to allow him to see a doctor. Instead, she stated, "[Y]ou will heal in Administrative Segregation." (*Id.* at 10.) While in administrative segregation, Plaintiff wrote kites and repeatedly called out requests to see a doctor, but he was ignored or told to shut up. He did not see a doctor until 18 days later.

Plaintiff alleges that he still experiences pain from his untreated injuries. He seeks compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify

the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges that Defendants Caruso, the unknown Administrator of the Bureau of Health Care and the unknown Chief Medical Officer (collectively, the MDOC Defendants) are responsible for having established MICH. DEP'T OF CORR., Policy Directive 03.04.100(II), which provides as follows:

> An appropriate QHP[1] shall triage the information presented on the Health Care Request and either respond in writing to the prisoner's request, or see the prisoner, within one business day after receipt of the form. If a written response is provided, it shall address the following, as appropriate:
>
> 1. The prisoner's medical request or complaint.
>
> 2. The need for an appointment. If an appointment is needed, the prisoner shall be seen by an appropriate QHP within two business days after the written response is provided and/or, if necessary, by an MSP[2] within seven business days after the written response is provided.
>
> 3. Medication renewal.
>
> 4. Health education relevant to the request or complaint.

*Id.* Plaintiff alleges that, because the policy permits the exercise of discretion by a qualified health professional without mandating an examination in all cases, it authorizes deliberately indifferent care in violation of the Eighth Amendment. In addition, Plaintiff alleges that the MDOC Defendants should have known that the unconstitutional policy would contribute to or cause the SLF Defendants to deprive constitutionally adequate treatment in the instant case.

---

[1] A "QHP" is defined under the policy as a "Qualified Health Professional," which is further defined as "[a] physician, physician assistant, nurse practitioner, registered nurse, dentist, dental hygienist or other health care professional licensed by the State of Michigan or certified to practice within the scope of his/her training." MICH. DEP'T OF CORR., Policy Directive 03.04.100(B).

[2] An "MSP" is defined as a "Medical Service Provider," meaning "[a] physician, physician assistant or nurse practitioner licensed by the State of Michigan or certified to practice within the scope of his/her training." MICH. DEP'T OF CORR., Policy Directive 03.04.100(A).

Plaintiff's claim against the MDOC Defendants is wholly without merit. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Nothing about the policy as written authorizes constitutionally inadequate medical care. To the contrary, the provision mandates a timely response to any prisoner request for medical care and requires that the responding health professional both be an "appropriate" responder and make an "appropriate" response. The policy demands nothing more nor less than that the responding health care provider be qualified to make the medical assessment and that the assessment be

medically appropriate to the information presented in the health care request. Nothing about the policy may be construed to authorize deliberate indifference by any medical responder. *Cf. Dodson v. Wilkinson*, 304 F. App'x 434, 441 (6th Cir. 2008) (considering and rejecting a challenge to the MDOC's Hepatitis C policy where the policy expressly stated that the prescribed protocol was not to serve as a substitute for professional judgment by the attending physician). As a consequence, Plaintiff's challenge to the policy is meritless.

Moreover, to the extent that Plaintiff suggests that the MDOC Defendants were negligent and should have been aware of the failures of the Defendants at SLF to provide adequate medical care, he fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. Plaintiff has failed to allege that the MDOC Defendants engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

III.     Transfer

Under the revised venue statute, venue in federal-question cases lies in the district in which any defendant resides or in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b). The remaining Defendants are all public officials serving at the St. Louis Correctional Facility, which is located in Gratiot County, and they "reside" in that county for purposes of venue over a suit challenging official acts. *See Butterworth v. Hill*, 114 U.S. 128, 132 (1885); *O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972). Plaintiff's allegations against these Defendants arose in Gratiot County, where Defendants allegedly committed the acts giving rise to this case. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 185-87 (1979). Gratiot County is within the geographical boundaries of the Eastern District of Michigan. 28 U.S.C. § 102(a). In these circumstances, venue is proper only in the Eastern District.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Caruso and Unknown Parties 1 and 2 will be dismissed from the action for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The remainder of the action will be transferred to the Eastern District of Michigan on the basis of venue.

An Order consistent with this Opinion will be entered.


Dated: November 25, 2009                      /s/ Robert Holmes Bell
                                              ROBERT HOLMES BELL
                                              UNITED STATES DISTRICT JUDGE